IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

| | | |
|---|---|---|
| PHILIP P. SNYDER, | ) | |
| | ) | |
| | ) | 2:25-CV-00217-CBB |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHELLE A. KING, ACTING | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION; | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION[1]**
**ON CROSS MOTIONS FOR SUMMARY JUDGMENT**
**ECF Nos. 8 and 9**

**Christopher B. Brown, United States Magistrate Judge**

I.    **Introduction**

Plaintiff Phillip P. Snyder ("Snyder") filed his claim for disability insurance benefits until Title II of the Social Security Act (the "ACT"), 42 U.S.C. §§ 401-434 on June 23, 2022. ECF No. 8 at 4.  Snyder also filed a Title XVI application for supplemental security income on September 1, 2022. *Id.*  Snyder claimed he became disabled beginning January 3, 2022 due to fibromyalgia, Type II diabetes, neuropathy, trigger finger, obesity, depressive disorder, anxiety disorder, post-traumatic stress disorder and substance abuse disorder. *Id.*

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

After Snyder's claims were initially denied, he sought reconsideration and a hearing before an Administrative Law Judge ("ALJ") held on April 25, 2024. *Id.* On July 10, 2024, the ALJ denied Snyder's claim. *Id.* The Appeals Counsel declined to review the ALJ's decision and Snyder filed a timely appeal with this Court. *Id.* at 5.

Presently pending before the Court are cross motions for summary judgment by the parties. ECF Nos. 8 and 9. The motions are fully briefed and ripe for consideration. ECF Nos. 8, 10, 11.

For the reasons that follow Snyder's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the Commissioner's decision to deny benefits is affirmed.[2]

## II.    Factual Background

The following summary is limited to information that is relevant to the current appeal.

In his lifetime Plaintiff Snyder worked as a Data Entry Clerk. ECF No. 6-2 at 46. Snyder stopped working in 2020. Snyder alleges he became disabled on or about January 3, 2022, when he was 40 years old. ECF No. 8 at 4. Snyder has been diagnosed with a number of impairments including fibromyalgia, Type II diabetes, neuropathy, trigger finger, obesity, depressive disorder, anxiety disorder,

---

[2]     Frank Bisignano is substituted as the Defendant in this matter, pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g). The Clerk is directed to amend the docket to reflect this change.

post-traumatic stress disorder ("PTSD") and substance abuse disorder. ECF No. 8 at 4.

Beginning in 2021, Snyder sought treatment from several medical professionals for his mental health impairments including Ellen Ulmer, LPC, Jennifer Conway, P.A., Amanda Keffner, PMHNP, Christy Saunders, M.A., Tracey Fowler, CRNP, Melissa Sasso, CRNP, and Lisa Livecchi, CRNP. ECF No. 8 at 5-10. Throughout his treatment, Snyder reported symptoms of, *inter alia*, depression, anxiety, stress, difficulty focusing, memory issues, and fatigue. *Id.* Among other medical testimony, there are several key medical opinions and evaluations in the present record related to Snyder's impairments:

### Jennifer Conway, P.A.: Treating Medical Professional

On March 4, 2024, PA Conway conducted a Mental Capacity Assessment of Snyder and listed diagnoses of attention deficit hyperactivity disorder ("ADHD"), PTSD, generalized anxiety disorder and major depressive disorder. ECF No. 6-7 at 522. She assessed Snyder as having moderate limitations in his ability to set realistic goals, make plans independently of others, handle conflicts with others and adopt to changes. *Id.* at 522-24. She further assessed Snyder as having marked limitations in his ability to recognize a mistake and correct it, identify and solve problems, use reason and judgment to make work-related decisions, initiate and perform a task he knows how to do, work close to or with others without interrupting or distracting them, and cooperate with others or ask for help when needed. *Id.* Finally, she assessed Snyder as extremely limited in his ability to work

at an appropriate and consistent pace, complete tasks in a timely manner, ignore or avoid distractions while working, sustain an ordinary routine and regular attendance at work, work a full day without needing more than the allotted number or length of rest periods, and manage psychologically based symptoms. *Id.*

### State Agency Consultations

In August 2022, John Robert Vigna, Psy.D., a state agency medical consultant reviewed Snyder's medical records and found that he has moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. ECF No. 6-3 at 5. Dr. Vigna found Snyder's ability to understand, remember and carry out complex or detailed instructions was limited, but that he could understand and remember at least simple, one and two-step instructions and carry out very short and simple instructions. *Id.* at 9. Dr. Vigna found Snyder was capable of asking simple questions, accepting instruction, and making simple decisions and explained he was able to perform simple, routine tasks in a stable environment. *Id.* at 9-10.

In January 2023, Thomas E. Fink, Ph.D., a state agency psychologist consultant reviewed Snyder's medical records and found he had mild limitations in understanding, remembering or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. *Id.* at 15, 25. Dr. Fink found Snyder's mental impairments were non-severe. *Id.*

### III.    The ALJ's Decision[3]

In his decision, the ALJ used the five-step sequential evaluation process as required.

Step One:

At step one– whether the claimant is engaging in substantial gainful activity – the ALJ found Snyder met the insured status requirements of the Social Security Act through December 31, 2025 and had not engaged in substantial gainful activity since the alleged onset of his symptoms on January 3, 2022. ECF No. 6-2 at 19.

Steps Two and Three:

At steps two and three of the sequential analysis – whether the claimant has medically determinable impairments that are severe and whether the claimant's impairments are so severe to meet or medically equal the criteria set forth in the regulations – the ALJ considered Snyder's impairments and their severity.  The ALJ found Snyder had nine impairments which qualified as severe: fibromyalgia, Type II diabetes, neuropathy, trigger finger, obesity, depressive disorder, anxiety disorder, post-traumatic stress disorder, and substance abuse disorder. Id. (citing 20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c)).  Although documented, the ALJ found Snyder's gastroesophageal reflux disease ("GERD") and allergic rhinitis to be

---

[3]    The summary of the ALJ's opinion is limited to information relevant to the current appeal.

"non-severe" impairments as they did not more than minimally limit his ability to perform basic work activities. *Id.*

As for Snyder's physical impairments of fibromyalgia, diabetes and obesity, the ALJ found these physical impairments, although severe, did not meet or medically equal the severity of criteria of Listing 11.14 when considered alone or in combination with the other impairments. *Id.* at 19-20.

As for Snyder's mental impairments related to understanding, remembering or applying information, the ALJ found he had a mild limitation. *Id.* at 20. As for Snyder's mental impairments related to interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself, the ALJ found he had a moderate limitation. *Id.* at 20-21. The ALJ found that because Snyder's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied. *Id.* at 21. The ALJ also considered whether "paragraph C" criteria were satisfied and found no evidence to support a finding of a "serious and persistent" mental impairment. *Id.* The ALJ stated the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the

6

degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id.*

Since the ALJ determined Snyder's severe impairments did not meet the requirements of the Listings, the ALJ determined Snyder's residual functional capacity ("RFC"), meaning the limitations the impairments place on Snyder's ability to perform gainful work activity. The ALJ found none of the supplied medical opinion evidence persuasive. *Id.* at 24-26. With respect to PA Conway's opinion, the ALJ found her assessment that Snyder had marked limitations in understanding, remembering, and applying information and interaction with others and extreme limitations in concentration, persistence and pace and adapting or managing himself to be unpersuasive. *Id.* at 26. The ALJ found PA Conway's opinion was "not supported by any noted examination performed by [PA] Conway[]" and was otherwise "not consistent with the overall record, which reflects that [Snyder] demonstrates primarily normal memory, attention, concentration and thought content." *Id.*

The ALJ assigned Snyder the following RFC:

the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he can frequently climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently reach overhead bilaterally; can frequently reach in all other directions bilaterally; can frequently handle, finger, and feel bilaterally; can never work at unprotected heights or with moving mechanical parts; can occasionally work operating a motor vehicle; can occasionally work in humidity and wetness; can occasionally work in dust, odors, fumes, and pulmonary irritants; can occasionally work in extreme heat and extreme cold; and can occasionally work in vibration.

> The claimant is able to apply common sense understanding to carry out detailed (but uninvolved) written or oral instructions; is able to occasionally interact with supervisors, coworkers, and the public; cannot perform work requiring as specific production rate (such as assembly line work or work requiring hourly quotas); and can occasionally deal with changes in a routine work setting.

*Id.* at 21-22.

Step Four:

At step four – whether the claimant's impairments prevent him from performing his past relevant work – the ALJ found Snyder could not perform his past relevant work as a Data Entry Clerk. *Id.* at 22.

Step Five:

At step five - whether the claimant can perform any other work which exists in the national economy – the ALJ took into consideration Snyder's age, education, work experience and RFC, and found there are jobs that exist in significant numbers in the national economy that Snyder could perform, including an Inspector Hand Packager (DOT #559.687-074, light SVP2), Price Marker (DOT #209.587-034, light SVP 2), and Garment Sorter (DOT #222.687.014, light, SVP 2). Id. at 25-26. The ALJ then found Snyder was not disabled. *Id.* at 26.

## IV.   Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's

findings of fact. *See* 42 U.S.C. § 405(g).  If the Court finds substantial evidence supports the final decision, it must uphold it.  *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  It means "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Id.*; *Biestek v. Berryhill*, 587 U.S. 97 (2019).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  An ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[ ]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705–06.  Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).  Remand is appropriate if the record is incomplete or if the ALJ's findings are incomplete and failed to

9

"explicitly weigh all relevant, probative and available evidence" of record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (cleaned up).

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that they cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

As mentioned previously, when reviewing a claim the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability.  20 C.F.R. §§ 404.1520, 416.920.  The ALJ must determine:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe;

(3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1;

(4) whether the claimant's impairments prevent them from performing their past relevant work; and

(5) if the claimant is incapable of performing their past relevant work, whether they can perform any other work which exists in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).  The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment under steps 1

10

through 4. *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). If the claimant meets his burden and shows he is unable to resume previous employment, the burden shifts to the Commissioner at step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he can perform alternative substantial gainful activity. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

## V. Discussion

Snyder argues the ALJ erred in assessing his RFC because he did not adequately consider the consistency and supportability factors when he found PA Conway's opinion unpersuasive. ECF No. 8 at 12-13. Within that overarching argument, Snyder submits the ALJ erred when (1) he made a conclusory statement that the record did not support PA Conway's opinion without citing any evidence to explain his reasoning; and (2) the record citations the ALJ provided did not support his conclusions, are cherry-picked and ignored other records that supported PA Conway's opinion. *Id.* at 13-16.

The Commissioner responds that the ALJ's decision is supported by substantial evidence asthe ALJ properly considered competing medical opinions and prior administrative medical findings in assessing Snyder's RFC. ECF No. 10 at 14-22.

For the reasons that follow, the ALJ did not err in finding PA Conway's opinion unpersuasive and Snyder's RFC was supported by substantial evidence.

When considering a medical opinion, an ALJ does not have to "defer or give any specific evidentiary weight, including controlling weight" to any one medical opinion, including a claimant's treating medical provider. 20 C.F.R. § 404.1520c(a). Instead, all medical opinions are evaluated for their persuasiveness based on five factors: supportability, consistency, relationship with the claimant, specialization and "other factors that tend to support or contradict" the medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The two "most important factors" in determining the persuasiveness of the medical opinions are consistency and supportability. 20 C.F.R. § 404.1520c(a); *Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025).

While the ALJ must "articulate how [they] considered the medical opinions[,]" 20 C.F.R. § 404.1520c(a), the ALJ is not required to invoke any "magic words" in their decision. *Chung*, 2025 WL 1065241, at *3 (quoting *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). So long as the ALJ "weave[s] supportability and consistency throughout [his] analysis of which doctors were persuasive[,]" the evaluation is sufficient. *Chung*, 2025 WL 1065241, at *3 (quoting *Zaborowski*, 115 F.4th at 639). The court reviews the ALJ's decision "as a whole" and the decision need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

The ALJ found PA Conway's March 4, 2024 Mental Capacity Assessment unpersuasive, stating in his decision:

> The additional opinion of Jennifer Conway, PA is not persuasive. (Ex 20F). Ms. Conway opines that the claimant has marked limitations in understanding, remembering, and applying information and interacting with others and extreme limitations in concentration, persistence, and pace and adapting or managing himself. (Ex. 20F). This opinion is not supported by any noted examination performed by Ms. Conway. It is also not consistent with the overall record, which reflects that the claimant demonstrates primarily normal memory, attention, concentration, and thought content. (Ex. 3F, Page 5; Ex. 10F, Page 5; Ex. 12F, Page 7).

ECF No. 6-2 at 26.

The Court finds that the ALJ adequately evaluated the supportability and consistency of PA Conway's opinion and therefore finds no error.

First, the ALJ adequately analyzed the supportability factor which requires the ALJ consider "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." *Stark v. Dudek*, No. 2:24-CV-1464, 2025 WL 1736485, at *4, n. 2 (W.D. Pa. June 23, 2025) (quoting *Cota v. Kijakazi*, 21-cv-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022)). *See also* 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)...the more persuasive the medical opinions ...will be." 20 C.F.R. § 404.1520c(c)(1).

The ALJ found PA Conway's opinion unpersuasive because it was not supported by any documented physical examination conducted by PA Conway. Snyder argues this finding was "conclusory" and did not create "any logical bridge from the evidence to his determination" because the ALJ "failed to reference any of

the medical records[]" in rejecting PA Conway's opinion. ECF No. 8 at 13.  There is no requirement that an ALJ must cite specific record evidence, and an ALJ's "mere failure to cite specific evidence does not establish that the ALJ failed to consider it." *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004).  Moreover, an ALJ may consider the relationship between the claimant and the medical source in evaluating the medical opinion. 20 C.F.R. § 404.1520c(c)(3).  This includes, *inter alia*, the frequency and extent of treatment provided, and whether the medical source examined the claimant in rendering her opinion. 20 C.F.R. § 404.1520c(c)(3)(ii), (iv), (v).  Thus, the ALJ did not err by not citing specific record evidence when he found PA Conway's opinion unpersuasive because the opinion was not supported by any documented physical examination.

Snyder also argues PA Conway's opinion was indeed supported by her treatment notes. ECF No. 8 at 14.  Snyder points to PA Conway's notes which stated Snyder suffered from "widespread generalized pain that was occurring more frequently and that prevented him from working through the day" and he had "been struggling with difficulty in concentration and that he has been struggling in his job and relationship related to his inattentiveness and getting easily distracted." *Id.* "The presence of evidence in the record that supports a contrary conclusion" from the ALJ's ultimate determination "does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).  The ALJ's failure to reference PA Conway's treatment notes describing Snyder's subjective complaints

14

does not undermine his conclusion that PA Conway's opinion was unpersuasive. The ALJ did in fact consider Snyder's mental impairments and considered both his subjective symptoms and mental examinations in his decision. *See* ECF No. 6-2 at 23-24.

Snyder next argues that the ALJ erred when he found Snyder "demonstrate[d] primarily normal memory, attention, concentration and thought content" and found PA Conway's opinion inconsistent with the overall record. ECF No. 8 at 14; ECF No. 6-2 at 26.  Snyder argues the ALJ cited to three medical visits to support this conclusion but overlooked other significant aspects of two of these visits. ECF No. 8 at 14-15.  Specifically, Snyder argues the ALJ cited to a September 9, 2021 visit in which he reported significant complications with his memory, focus and fatigue, requested neurological testing for Alzheimer's, reported forgetting to take his medication, reported more frequent chronic pain flairs, and reported taking monthly ketamine injections for anxiety. *Id.* at 15.  Snyder also argues the ALJ cited to an August 3, 2022 visit in which he reported continued mania/hypomania and objective findings of intermittent eye contact, sad and depressed mood, anxiousness and restricted affect. *Id.*  The provider also noted Snyder suffered from major depressive disorder, generalized anxiety disorder and PTSD. *Id.*  Snyder argues the ALJ cherry-picked "references and parts of the record to support his own conclusion that the opinion of PA Conway is inconsistent with the record[.]" *Id.*

The ALJ's consistency analysis for PA Conway's medical opinion was adequate. Consistency requires the ALJ to consider "the extent to which the medical source's opinion is consistent with the record as a whole." *Stark*, 2025 WL 1736485, at *4, n. 2 (citing *Cota*, 2022 WL 3686593, at *5; 20 C.F.R. § 404.1520c(c)(2)). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)...will be." 20 C.F.R. § 404.1520c(c)(2). The key difference between supportability and consistency is that "supportability considers the evidence and explanations 'presented b[y] a medical source' whereas consistency looks at 'evidence from other medical sources and nonmedical sources in the claim.'" *Gongon v. Kijakazi*, 676 F.Supp.3d 383, 397 (E.D. Pa. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)).

The ALJ found PA Conway's opinion was inconsistent with the overall record and cited to three examinations, including: (1) PA Conway's 9/9/2021 treatment notes, ECF No. 6-7 at 88-89 (noting Snyder presented as "alert, oriented, cognitive function intact, cooperative with exam, judgement and insight good, thought content without suicidal ideation, delusions."); (2) NP Fowler's 8/3/2022 intake record, ECF 6-7 at 272-273 (examining Snyder's thought process as goal directed, organized, logical and linear; no abnormal thought content; intact memory and attention/concentration); and (3) 7/21/22 examination, ECF No. 6-7 at 227 (noting Snyder's attention/concentration, memory, thought process and content as within normal limits). The ALJ sufficiently contrasted PA Conway's opinion that Snyder

had marked and extreme limitations in his mental abilities with other treatment notes and PA Conway's own treatment notes that observed Snyder demonstrated primarily normal memory, attention, concentration and thought content.

Considering the ALJ's decision as a whole, he also rejected the two state agency psychiatrists' opinions – one opining Snyder's mental impairments were non-severe, and one opining Snyder is limited to 1 – 2 step instructions and performing simply routine tasks in a controlled environment and also lacked any interpersonal limitations. ECF No. 6-2 at 24-25.  The ALJ also considered Snyder's depressive disorder, anxiety and PTSD diagnoses, his subjective symptoms, and examinations where he demonstrated reduced memory, attention and concentration and poor-to-fair insight and judgment. *Id.* at 23-24.  However, the ALJ found Snyder more frequently had normal mental examinations. *Id.* at 24.  The ALJ explained Snyder's mental abilities required limitations, and formulated Snyder's RFC accounting for those limitations. *Id.* at 24.  The ALJ found:

> The claimant's difficulty interacting with others supports the above limitation to occasional interaction with others.  The claimant's difficulty adapting or managing himself supports the above limitation to occasional changes in a routine work setting.  The claimant's difficulty with concentration, persistence, and pace supports the above limitation to detailed (but not complex) instructions and no work requiring a specific production rate.

*Id.*  The ALJ did not "cherry pick" favorable records in making his finding.  He sufficiently evaluated the persuasiveness of each medical opinion, compared those opinions to the evidence of record, imposed mental limitations in the RFC and

17

sufficiently explained his decision to impose or not impose certain limitations as established by the evidence.

The Court finds no error with the ALJ's analysis of PA Conway's opinion and substantial evidence supported the ALJ's evaluation. Accordingly, the ALJ's decision is affirmed.

## VI.    Conclusion

For the foregoing reasons, the final decision of the Commissioner denying Snyder's claim is AFFIRMED. Snyder's motion for summary judgment is DENIED. An appropriate Order follows.

DATED this 24th day of March, 2026.

BY THE COURT:


s/Christopher B. Brown
United States Magistrate Judge

18